UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA

v.

AL'S ASPHALT PAVING
COMPANY, INC.,

Defendant.

Criminal No. 23-20699-01

Filed:

Violations: 15 U.S.C § 1
Sherman Act Conspiracy

TWO COUNTS

## PLEA AGREEMENT

The United States Department of Justice, Antitrust Division ("United States") and AL'S ASPHALT PAVING COMPANY, INC. ("Defendant") enter into this Plea Agreement under Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."), the terms and conditions of which are as follows:

## PARTIES TO AND SCOPE OF THE AGREEMENT

1. The Defendant is organized under the laws of Michigan with its principal place of business in Taylor, Michigan. This Agreement binds the Defendant and the United States Department of Justice, Antitrust Division.

## RIGHTS OF DEFENDANT

2. The Defendant understands its rights:

   (a)   to be represented by an attorney;

   (b)   to be charged by Indictment;

1

(c)     to plead not guilty to any criminal charge brought against it;

(d)     to have a trial by jury, at which it would be presumed not guilty of the charge and the United States would have to prove every essential element of the charged offense beyond a reasonable doubt for it to be found guilty;

(e)     to confront and cross-examine witnesses against it and to subpoena witnesses in its defense at trial;

(f)     to appeal its conviction if it is found guilty; and

(g)     to appeal the imposition of sentence against it.

## AGREEMENT TO PLEAD GUILTY
## AND WAIVE CERTAIN RIGHTS

3.     The Defendant knowingly and voluntarily waives:

(a)     the rights set out in subparagraphs 2(b)-(e) above;

(b)     the right to file any appeal or collateral attack that challenges its conviction, including but not limited to any appeal or collateral attack raising any argument that (1) the statute to which it is pleading guilty is unconstitutional or (2) the admitted conduct does not fall within the scope of such statute; and

(c)     the right to file any appeal or collateral attack, including but not limited to an appeal under 18 U.S.C. § 3742, that challenges the sentence imposed by the Court, regardless of how the sentence is determined by the

2

Court. This agreement does not affect the rights or obligations of the United

States as set forth in 18 U.S.C. § 3742(b).

Nothing in this paragraph, however, will act as a bar to the Defendant perfecting

any legal remedies it may otherwise have 1) on collateral attack respecting claims

of ineffective assistance of counsel; or 2) on appeal or collateral attack respecting

claims of prosecutorial misconduct. The Defendant agrees that there is currently

no known evidence of ineffective assistance of counsel or prosecutorial

misconduct. Under Fed. R. Crim. P. 7(b), the Defendant will waive indictment and

plead guilty to a two-count Information to be filed in the United States District

Court for the Eastern District of Michigan. Count One of the Information will

charge the Defendant with participating in a conspiracy to suppress and eliminate

competition by agreeing to rig bids for contracts to provide asphalt paving services

in the state of Michigan beginning at least as early as March 2013 and continuing

until at least as late as November 2018, in violation of the Sherman Antitrust Act,

15 U.S.C. § 1. Count Two of the Information will charge the Defendant with

participating in a conspiracy to suppress and eliminate competition by agreeing to

rig bids for contracts to provide asphalt paving services in the state of Michigan

beginning at least as early as June 2013 and continuing until at least as late as June

2019, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

3

4.    The Defendant will plead guilty to the criminal charges described in Paragraph 3 under the terms of this Plea Agreement and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 6 below.

## RELEVANT CONSIDERATIONS

5.    The United States enters into this Plea Agreement based on the individual facts and circumstances of this case. Among the facts considered were: the nature and seriousness of the Defendant's illegal conduct, which, as described more fully in Paragraph 6, below, involved the Defendant's participation in conspiracies to rig bids for contracts to provide asphalt paving services in the state of Michigan; and the Defendant's agreement, as set forth in Paragraph 16, below, to provide full, truthful, and continuing cooperation with the United States' investigation of violations of federal antitrust and related criminal laws involving the provision of asphalt paving services in the state of Michigan and elsewhere, and any litigation arising therefrom to which the United States is a party.

## FACTUAL BASIS FOR OFFENSE CHARGED

6.    Had this case gone to trial, the United States would have presented evidence sufficient to prove the following facts:

(a)    As to Count One:

(i)    For purposes of this Plea Agreement, the "relevant period" is that period beginning at least as early as March 2013 and continuing until at least as late as November 2018. During the relevant period, the Defendant was a corporation organized and existing under the laws of Michigan, with its principal place of business in Taylor, Michigan. During the relevant period, the Defendant employed more than 50 but less than 200 individuals. During the relevant period, the Defendant was a provider of asphalt paving services in the state of Michigan. These asphalt paving services included asphalt paving projects such as large driveways, parking lots, and private roadways.

(ii)    During the relevant period, Company A also was a provider of asphalt paving services, with its principal place of business in the Eastern District of Michigan. During the relevant period, the Defendant, through its officers and employees, including individuals within substantial authority personnel, participated in a conspiracy with other individuals and Company A, the primary purpose of which was to rig bids for contracts to provide asphalt paving services in the state of Michigan. In furtherance of the

5

conspiracy, the Defendant's officers and employees engaged in conversations and communications with representatives of Company A regarding which asphalt paving services contracts each company wanted to win, and agreed, during these conversations and communications, to rig bids for asphalt paving services contracts in each other's favor. To effectuate these bid-rigging agreements, officers and employees of the agreed-upon winning co-conspirator solicited intentionally non-competitive bids from the agreed-upon losing co-conspirator. The agreed-upon winning co-conspirator provided the agreed-upon losing co-conspirator with the price it intended to bid, and the agreed-upon losing co-conspirator used that information to craft a higher-priced non-competitive bid, which it then submitted to the customer. As a result of these bid-rigging agreements, the Defendant and Company A each provided asphalt paving services and accepted payment under contracts obtained through a collusive and non-competitive process.

(iii)    During the relevant period, records and documents necessary for the provision of asphalt paving services by one or more of the co-conspirators, as well as payment for those services, traveled in interstate trade and commerce. During the relevant period, the

business activities of the Defendant and its co-conspirators in connection with the provision of asphalt paving services that were the subject of this conspiracy were within the flow of, and substantially affected, interstate trade and commerce.

(iv)    During the relevant period, acts in furtherance of this conspiracy were carried out within the Eastern District of Michigan. The conspiratorial conversations and communications described above took place in this District, and asphalt paving services that were the subject of this conspiracy were provided by one or more of the co-conspirators to customers in the Eastern District of Michigan.

(b)     As to Count Two:

(i)     For purposes of this Plea Agreement, the "relevant period" is that period beginning at least as early as June 2013 and continuing until at least as late as June 2019. During the relevant period, the Defendant was a corporation organized and existing under the laws of Michigan, with its principal place of business in Taylor, Michigan. During the relevant period, the Defendant employed more than 50 but less than 200 individuals. During the relevant period, the Defendant was a provider of asphalt paving services in the state of

7

Michigan.  These asphalt paving services included asphalt paving

projects such as large driveways, parking lots, and private roadways.

      (ii)     During the relevant period, F. ALLIED

CONSTRUCTION COMPANY, INC. ("ALLIED") also was a

provider of asphalt paving services, with its principal place of

business in Clarkston, Michigan.  During the relevant period, the

Defendant, through its officers and employees, including individuals

within substantial authority personnel, participated in a conspiracy

with other individuals and ALLIED, the primary purpose of which

was to rig bids for contracts to provide asphalt paving services in the

state of Michigan.  In furtherance of the conspiracy, the Defendant's

officers and employees engaged in conversations and communications

with representatives of ALLIED regarding which asphalt paving

services contracts each company wanted to win, and agreed, during

these conversations and communications, to rig bids for asphalt

paving services contracts in each other's favor.  To effectuate these

bid-rigging agreements, officers and employees of the agreed-upon

winning co-conspirator solicited intentionally non-competitive bids

from the agreed-upon losing co-conspirator.  The agreed-upon

winning co-conspirator provided the agreed-upon losing co-

conspirator with the price it intended to bid, and the agreed-upon losing co-conspirator used that information to craft a higher-priced non-competitive bid, which it then submitted to the customer. As a result of these bid-rigging agreements, the Defendant and ALLIED each provided asphalt paving services and accepted payment under contracts obtained through a collusive and non-competitive process.

(iii)    During the relevant period, records and documents necessary for the provision of asphalt paving services by one or more of the co-conspirators, as well as payment for those services, traveled in interstate trade and commerce. During the relevant period, the business activities of the Defendant and its co-conspirators in connection with the provision of asphalt paving services that were the subject of this conspiracy were within the flow of, and substantially affected, interstate trade and commerce.

(iv)    During the relevant period, acts in furtherance of this conspiracy were carried out within the Eastern District of Michigan. The conspiratorial conversations and communications described above took place in this District, and asphalt paving services that were the subject of this conspiracy were provided by one or more of the co-conspirators to customers in the Eastern District of Michigan.

(c)   As to Counts One and Two:

(i)   During the relevant period, the volume of commerce attributable to the Defendant under U.S.S.G. §2R1.1 associated with the provision of asphalt paving services affecting U.S. customers totaled at least $3,657,748.

## ELEMENTS OF THE OFFENSE

7.   The elements of the offenses charged in Count One and Count Two of the Information are that:

(a)   the conspiracy described in each count of the Information existed at or about the time alleged;

(b)   the Defendant knowingly became a member of the conspiracy described in each count of the Information; and

(c)   the conspiracy described in each count of the Information either substantially affected interstate trade and commerce in goods or services or occurred within the flow of interstate trade and commerce in goods and services.

## POSSIBLE MAXIMUM SENTENCE

8.     The Defendant understands that the statutory maximum penalty which may be imposed against it on conviction for each violation of Section One of the Sherman Antitrust Act is a fine in an amount equal to the greatest of:

(a)     $100 million (15 U.S.C. § 1);

(b)     twice the gross pecuniary gain the conspirators derived from the crime (18 U.S.C. § 3571(c) and (d)); or

(c)     twice the gross pecuniary loss caused to the victims of the crime by the conspirators (18 U.S.C. § 3571(c) and (d)).

9.     In addition, the Defendant understands that:

(a)     under §8D1.2(a)(1) of the United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") or 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years;

(b)     under U.S.S.G. §8B1.1 or 18 U.S.C. § 3563(b)(2) or 3663(a)(3), the Court may order it to pay restitution to the victims of the offense; and

(c)     under 18 U.S.C. § 3013(a)(2)(B), the Court is required to order the Defendant to pay a $400 special assessment for each count on conviction for the charged crime.

11

## SENTENCING GUIDELINES

10.    The Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider, in determining and imposing sentence, the Guidelines Manual in effect on the date of sentencing unless that Manual provides for greater punishment than the Manual in effect on the last date that the offense of conviction was committed, in which case the Court must consider the Guidelines Manual in effect on the last date that the offense of conviction was committed.  The parties agree there is no *ex post facto* issue under the November 1, 2023 Guidelines Manual.  The Court must also consider the other factors set forth in 18 U.S.C. § 3553(a) in determining and imposing sentence.  The Defendant understands that the Court will make Guidelines determinations by applying a standard of preponderance of the evidence.  The Defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based on consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a).  Under U.S.S.G. §1B1.8, the United States agrees that self-incriminating information that the Defendant provides to the United States under this Plea Agreement will not be used to increase the volume of affected commerce attributable to the Defendant or in determining the Defendant's applicable Guidelines range, except to the extent provided in U.S.S.G. §1B1.8(b).

## SENTENCING AGREEMENT

11.    Under Fed. R. Crim. P. 11(c)(1)(B) and subject to the full, truthful, and continuing cooperation of the Defendant, the United States and the Defendant agree that the appropriate disposition of this case is, and agree to recommend jointly that the Court impose, a sentence within the applicable Guidelines range requiring the Defendant to pay to the United States a criminal fine of no less than $731,549 and no more than $914,436, and no order of restitution, subject to any potential fine offset that this Court may grant pursuant to U.S.S.G. §8C3.4 as a result of a criminal fine imposed in the sentence of any applicable individual for the same offense conduct for which the Defendant is being sentenced ("Recommended Sentence"). Each party is free to recommend a criminal fine within the $731,549 to $914,436 range. The parties agree that there exists no aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the Sentencing Guidelines justifying a departure under U.S.S.G. §5K2.0. The parties agree not to seek at the sentencing hearing any sentence outside of the Guidelines range nor any Guidelines adjustment for any reason that is not set forth in this Plea Agreement. The parties further agree that the Recommended Sentence is reasonable.

13

(a)     The Defendant intends to request, in the interest of justice under

18 U.S.C. § 3572(d)(1), that the fine be paid in installments equaling one-

sixth (1/6) of the total criminal fine imposed by the Court, plus any accrued

interest, per the following schedule:  within 30 days of imposition of

sentence; at the one-year anniversary of imposition of sentence

("anniversary"); at the two-year anniversary; at the three-year anniversary; at

the four-year anniversary; and at the five-year anniversary; provided,

however, that the Defendant will have the option at any time before the five-

year anniversary of prepaying the remaining balance (plus any accrued

interest) then owing on the fine.  The United States agrees to take no

position on such a request.  The Defendant understands that the Court's

refusal to impose an installment payment schedule will not void this Plea

Agreement.

(b)     The Defendant understands that the Court will order it to pay a

$400 special assessment per count, under 18 U.S.C. § 3013(a)(2)(B), in

addition to any fine imposed.

(c)     Both parties will recommend that no term of probation be

imposed, but the Defendant understands that the Court's denial of this

request will not void this Plea Agreement.

14

12.     Subject to the full, truthful, and continuing cooperation of the Defendant, as defined in this Plea Agreement, and before sentencing in this case, the United States will fully advise the Court and the Probation Office of the fact, manner, and extent of the Defendant's cooperation and its commitment to prospective cooperation with the United States' investigation and prosecutions, all material facts relating to the Defendant's involvement in the charged offense, and all other relevant conduct.  To enable the Court to have the benefit of all relevant sentencing information, the United States may request, and the Defendant will not oppose, that sentencing be postponed until its cooperation is complete.

13.     The United States and the Defendant understand that the Court retains complete discretion to accept or reject the Recommended Sentence or either party's specific sentencing recommendation.  The Defendant understands that, as provided in Fed. R. Crim. P. 11(c)(3)(B), if the Court does not impose the Recommended Sentence contained in this Agreement or either party's specific sentencing recommendation, it nevertheless has no right to withdraw its plea of guilty.

14.     In the event that the United States determines that the Defendant has breached the Plea Agreement and the Defendant fails to cure the breach, the entire amount of the fine, less amounts already paid (if any), shall be due and owing within ten business days after receipt by the Defendant of written notice of breach

15

from the United States.  If the Defendant fails to either cure or pay the balance due within ten business days of receipt of the written notice of breach, the Defendant will consent to entry of a civil judgment for the full balance due plus all reasonable costs incurred in the civil action, including attorney's fees and expenses; will provide the United States with its most recent audited financial statement; and will not oppose any collection action undertaken by the United States to satisfy the civil judgment.

15.   In light of the availability of civil causes of action, which potentially provide for a recovery of a multiple of actual damages, this Plea Agreement does not include any provision for restitution.

## DEFENDANT'S COOPERATION

16.   The Defendant will cooperate fully and truthfully with the United States in the prosecution of this case, the current federal investigation of violations of federal antitrust and related criminal laws involving the provision of asphalt paving services in the state of Michigan and elsewhere, any federal investigation resulting therefrom, and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party (collectively "Federal Proceeding"). Federal Proceeding includes, but is not limited to, an investigation, prosecution, litigation, or other proceeding regarding obstruction of, the making of a false statement or declaration in, the commission of perjury or

subornation of perjury in, the commission of contempt in, or conspiracy to commit such offenses in, a Federal Proceeding. The full, truthful, and continuing cooperation of the Defendant will include, but not be limited to:

     (a)    producing to the United States all documents, information, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine, in the possession, custody, or control of the Defendant, that are requested by the United States in connection with any Federal Proceeding; and

     (b)    using its best efforts to make available for interviews or testimony, as requested by the United States and at the Defendant's expense, present or former officers, directors, employees, agents, and consultants of the Defendant. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic or foreign law enforcement and regulatory authorities. Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Defendant, may have material information regarding the matters under investigation.

### GOVERNMENT'S AGREEMENT

17.    Subject to the full, truthful, and continuing cooperation of the Defendant, as defined in this Plea Agreement, and on the Court's acceptance of the

guilty plea called for by this Plea Agreement and the imposition of sentence, the

United States agrees that it will not bring further criminal charges against the

Defendant for any act or offense committed before the date of signature of this

Plea Agreement that was undertaken in furtherance of an antitrust conspiracy

involving the provision of asphalt paving services in the state of Michigan.  The

nonprosecution terms of this paragraph do not apply to (a) any acts of subornation

of perjury (18 U.S.C. § 1622), making a false statement (18 U.S.C. § 1001),

obstruction of justice (18 U.S.C. §§ 1503 *et seq.*), contempt (18 U.S.C. §§ 401-02),

or conspiracy to commit such offenses; (b) civil matters of any kind; (c) any

violation of the federal tax or securities laws or conspiracy to commit such

offenses; or (d) any crime of violence.

   18.   The Defendant understands that it may be subject to suspension or

debarment action by state or federal agencies other than the United States

Department of Justice, Antitrust Division, based on the conviction resulting from

this Plea Agreement, and that this Plea Agreement in no way controls what action,

if any, other agencies may take.  However, the Antitrust Division agrees that, if

requested, it will advise the appropriate officials of any governmental agency

considering such action of the fact, manner, and extent of the cooperation of the

Defendant as a matter for that agency to consider before determining what action,

if any, to take.  The Defendant nevertheless affirms that it wants to plead guilty

regardless of any suspension or debarment consequences of its plea.

## REPRESENTATION BY COUNSEL

19.     The Defendant has been represented by counsel and is fully satisfied

that its attorneys have provided competent legal representation.  The Defendant has

thoroughly reviewed this Plea Agreement and acknowledges that counsel has

advised it of the nature of the charge, any possible defenses to the charge, and the

nature and range of possible sentences.

## VOLUNTARY PLEA

20.     The Defendant's decision to enter into this Plea Agreement and to

tender a plea of guilty is freely and voluntarily made and is not the result of force,

threats, assurances, promises, or representations other than the representations

contained in this Plea Agreement.  The United States has made no promises or

representations to the Defendant as to whether the Court will accept or reject the

recommendations in this Plea Agreement.

## BREACH OF PLEA AGREEMENT

21.     If, during the period that any Federal Proceeding is pending, the

Defendant fails to provide full, truthful, and continuing cooperation, as defined in

this Plea Agreement, or otherwise violates any provision of this Plea Agreement,

the United States will notify counsel for the Defendant in writing by personal or

overnight delivery or email and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this paragraph), and the Defendant will be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement. The Defendant agrees that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the Defendant relating to the conduct described in Paragraph 6 or relating to conduct known to the United States before the date of the signing of this Agreement that is not time-barred by the applicable statute of limitations on the Effective Date of this Agreement, the statute of limitations period for such offense will be tolled for the period between the date of signature of this Plea Agreement and six months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

22.    The Defendant understands and agrees that in any further prosecution of it resulting from the release of the United States from its obligations under this Plea Agreement because of the Defendant's violation of this Plea Agreement, any documents, statements, information, testimony, or evidence provided by it to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against it. In addition, the Defendant

unconditionally waives its right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

## PUBLIC STATEMENTS BY THE DEFENDANT

23.    The Defendant expressly agrees that it will not, through current or future attorneys, directors, officers, employees, agents, or any other person authorized by the Defendant to speak on its behalf, make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Defendant set forth above or the facts described in the Information or Factual Basis section of this Plea Agreement. Any such contradictory statement will, subject to cure rights of the Defendant described below, constitute a violation of this Plea Agreement, and the Defendant thereafter will be subject to prosecution. The decision whether any public statement by any such person contradicting a fact contained in the Information or Factual Basis section of this Plea Agreement was made on behalf of the Defendant for the purpose of determining whether it has violated this Plea Agreement will be at the sole discretion of the United States. If the United States determines that a public statement by any such person contradicts in whole or in part a statement contained in the Information or Factual Basis section of this Plea Agreement, the United States shall so notify the Defendant, and the Defendant may avoid a violation of this Plea Agreement by publicly repudiating such statement(s) within five (5) business days after notification. The

21

Defendant will be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Information and the Factual Basis section of this Plea Agreement provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Information or Factual Basis section of this Plea Agreement. This paragraph does not apply to any statement made by any current or future director, officer, employee, or agent of the Defendant in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Defendant.

24.     The Defendant agrees that if it, its parent, and/or any of its direct or indirect subsidiaries or affiliates issue a press release or holds any press conference in connection with this Agreement, the Defendant shall first consult the United States to determine: (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the United States and the Defendant; and (b) whether the United States has any objection to the release or proposed statements.

## ENTIRETY OF AGREEMENT

25.     This Plea Agreement constitutes the entire agreement between the United States and the Defendant concerning the disposition of the criminal charges

in this case. This Plea Agreement cannot be modified except in writing, signed by the United States and the Defendant.

26.    The undersigned is authorized to enter this Plea Agreement on behalf of the Defendant as evidenced by the Resolution of the Board of Directors of the Defendant attached to, and incorporated by reference in, this Plea Agreement.

27.    A PDF signature will be deemed an original signature for the purpose of executing this Plea Agreement. Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

23

DATED: January 4, 2024
_____

Respectfully submitted,

BY: _____

EDWARD D. SWANSON
President
AL'S ASPHALT PAVING
COMPANY, INC.

BY: _____

THOMAS W. CRANMER
P25252
Counsel for Al's Asphalt Paving
Company, Inc.

BY: _____

RUBEN MARTINEZ, JR.
TX Bar No. 24052278
ALLISON M. GORSUCH
IL Bar No. 6329734
AMBRIS S. SARAVANAN
IL Bar No. 6342503
MELANIE G. WEGNER
IL Bar No. 6324826
Trial Attorneys

MICHAEL N. LOTERSTEIN
IL Bar No. 6297060
Assistant Chief
U.S. Department of Justice
Antitrust Division
209 S. Lasalle St. Suite 600
Chicago, Illinois
Tel.: 312-984-7200