UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 2:23-cr-20699-01 |
| v. | Hon. Gershwin A. Drain |
| AL'S ASPHALT PAVING COMPANY, INC. | |
| Defendants. | |

**UNITED STATES' SENTENCING MEMORANDUM FOR
<u>AL'S ASPHALT PAVING COMPANY, INC.</u>**

For more than half a decade, Defendant Al's Asphalt Paving Company, Inc. (the "Defendant") participated in two separate bid-rigging conspiracies that enabled it to win more than $3.6 million in asphalt paving services contracts. The conspiracies were extensive and affected dozens of projects and victims. The Defendant, through its officers and employees, including President, majority owner, and co-defendant Edward D. Swanson, corrupted the competitive bidding process and undermined the basic, but essential, notions of free and fair competition. The Defendant's actions violated the Sherman Act, 15 U.S.C. § 1, and for the reasons set forth in this sentencing memo, the United States recommends that the Court sentence the Defendant to a criminal fine of $914,436, subject to any potential fine offset that the Court may grant under U.S.S.G. §8C3.4,

a $400 special assessment for each count of conviction, no term of probation, and no order of restitution.[1] This sentence is sufficient, but not greater than necessary, to achieve the sentencing goals of 18 U.S.C. § 3553(a).

## I. Offense Background

The Defendant is an asphalt paving company based in Taylor, Michigan. During the relevant periods of the conspiracies, the Defendant provided a range of asphalt paving services, such as large driveways, parking lots, and private roadways. Potential customers would solicit bids from providers of asphalt paving services such as the Defendant, typically requiring bids from at least two or more providers. The potential customer would award contracts for asphalt paving services after first reviewing and evaluating bids submitted by the providers.

From at least as early as March 2013 and continuing until at least as late as November 2018, the Defendant, through its officers and employees, including individuals within substantial authority personnel such as co-defendant Swanson, conspired with Asphalt Specialists, LLC ("ASI") and other co-conspirators to rig bids for contracts to provide asphalt paving services in the State of Michigan. In addition, from at least as early as June 2013 and continuing until at least as late as June 2019, the Defendant, through its officers and employees, including

---

[1] The parties have agreed to recommend a fine within the range of no less than $731,549 and no more than $914,436. Plea Agreement, ¶ 11 (Dkt. 21).

individuals within substantial authority personnel such as co-defendant Swanson, conspired with F. Allied Construction Company, Inc. ("Allied") and other co-conspirators to rig bids for contracts to provide asphalt paving services in the State of Michigan. The Defendant has pleaded guilty to its participation in both conspiracies. Plea Agreement, Dkt. 21.

The two conspiracies operated in much the same way. In furtherance of the respective conspiracies, the Defendant's officers and employees engaged in conversations and communications with ASI and Allied co-conspirators about which contracts each company wanted to win and agreed to rig bids in each other's favor. The co-conspirators shared price-related information, including bid submissions, so that the agreed-upon losing co-conspirator could craft a higher-priced non-competitive bid, which it then submitted to the customer. As a result, the agreed-upon winning company would indeed get the contract. The Defendant, ASI, and Allied each provided asphalt paving services and accepted payments under contracts obtained through this collusive and non-competitive process. The Defendant was paid $1,780,549 for projects that it rigged with ASI and $1,877,199 for projects that it rigged with Allied for a total stipulated volume of commerce of $3,657,748.

The victims in this matter are customers that paid the Defendant, ASI, and Allied for asphalt paving services projects that were awarded to the three

3

companies via rigged bids in furtherance of the two respective conspiracies. The United States has identified 40 such organizational victims.

## II. Sentencing Guidelines Calculations and Fine Methodology

In determining and imposing a sentence, the Court must consider the sentence established by the advisory Sentencing Guidelines. 18 U.S.C. § 3553(a)(4). The Sentencing Guidelines procedure for calculating the Guidelines fine range for a corporation charged with an antitrust offense is set forth below. Organizations, such as the Defendant, are sentenced pursuant to Chapter 8 of the Sentencing Guidelines. In the case of antitrust violations, in addition to the provisions of Chapter 8, special instructions with respect to determining fines for organizations are found in the Antitrust Guideline, U.S.S.G. § 2R1.1.

### A. Determining the Base Fine

Under the Sentencing Guidelines, the first step in determining the Defendant's fine range is to determine the base fine. The controlling guideline applicable to the counts charged is U.S.S.G. §2R1.1(d)(1), which provides that the base fine is 20% of the affected volume of commerce.

Counts One and Two are grouped under U.S.S.G. §3D1.2(d). Additionally, when multiple counts or conspiracies are involved, the volume of commerce should be treated cumulatively to determine a single, combined offense level. USSG §2R1.1(b)(2).

4

The volume of commerce attributable to a defendant for sentencing purposes in an antitrust case is the volume of commerce "done by him or his principal in goods or services that were affected by the violation." U.S.S.G. § 2R1.1(b)(2). Here, the parties have stipulated that the volume of commerce attributable to the Defendant for Counts One and Two is $3,657,748. Plea Agreement ¶ 6(c). The stipulated volume of commerce reflects payments made to the Defendant for work performed on rigged contracts to provide asphalt paving services in furtherance of the charged conspiracies. Under U.S.S.G. §2R1.1(d)(1), the base fine is 20% of $3,657,748, or $731,549.

### B. Sentencing Guidelines Range

After determining the base fine, the next step is to determine the Defendant's culpability score. The Defendant's base culpability score is 5. U.S.S.G. §8C2.5(a). The culpability score is increased by 2 points because the Defendant had more than 50 employees and an individual within substantial authority personnel participated in the conspiracies. U.S.S.G. §8C2.5(b)(4). The Defendant cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct, which adjusts the culpability score downward by 2 points. U.S.S.G. §8C2.5(g)(2). The resulting total culpability score is 5, which corresponds to a minimum multiplier of 1.0 and a maximum multiplier of 2.0. U.S.S.G. §8C2.6. Applying the multipliers to the base

5

fine of $731,549 yields a Guidelines fine range of $731,549 to $1,463,099. U.S.S.G. §8C2.7.

The calculations described above are summarized in the following chart:

| Description | U.S.S.G. § | Calculation |
|---|---|---|
| Volume of Commerce | 2R1.1(b)(2) | $3,657,748 (stipulated) |
| Base Fine | 8C2.4(a), (b) applying 2R1.1(d)(1) | $731,549 |
| Base Culpability Score | 8C2.5(a) | 5 |
| 50 or more employees and the involvement of substantial authority personnel | 8C2.5(b)(4) | +2 |
| Cooperation in the Investigation and Clear Acceptance of Responsibility | 8C2.5(g)(2) | -2 |
| Total Culpability Score | | 5 |
| Multipliers | 8C2.6 | 1.0 – 2.0 |
| **Corporate Guidelines Fine Range, applying Multipliers to Volume of Commerce** | 8C2.7 | $731,549 to $1,463,099 |

### III.  Recommended Sentence

The United States and the Defendant jointly agreed to recommend that the Court sentence the Defendant to pay a criminal fine of no less than $731,549 and no more than $914,436, subject to any potential fine offset under U.S.S.G. §8C3.4, no term of probation,[2] and no order of restitution. Plea Agreement ¶ 11. Each party is free to recommend a fine within the $731,549 to $914,436 range. Id.

---

[2] The Defendant understands that the Court's denial of the request for no term of probation will not void the Plea Agreement. Plea Agreement ¶ 11(c).

The United States recommends a fine of $914,436 as sufficient but not greater than necessary to meet the stated sentencing goals and factors set forth in 18 U.S.C. § 3553(a).

### A. The Recommended Sentence Satisfies 18 U.S.C. § 3553(a)

In addition to considering the Guidelines, the Court must also consider the other factors set forth in 18 U.S.C. § 3553(a) in determining and imposing a sentence that is "sufficient but not greater than necessary" to meet specified sentencing goals. Because the Defendant in this case is a corporation, not all the § 3353(a) factors apply. The most relevant factors in this inquiry include the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide adequate deterrence, see 18 U.S.C. § 3553(a)(2)(A)–(B), and the nature and circumstances of the offense and the history and characteristics of the Defendant, id. § 3553(a)(1). The recommended sentence is sufficient, but not greater than necessary, to achieve these objectives.

### i. The recommended sentence recognizes the seriousness of the offense and promotes respect for the law

The Defendant's violations of the Sherman Act are serious because they attacked the basic principle of competition integral to our economic system. As the Sentencing Commission (the "Commission") recognizes, "there is near universal agreement that restrictive agreements among competitors, such as

7

horizontal price-fixing (including bid-rigging) and horizontal market-allocation, can cause serious economic harm." U.S.S.G. § 2R1.1 cmt. background. The Defendant's two bid-rigging conspiracies are no exception. Asphalt paving services contracts were tainted by the conspiracies while customers lost the benefit of free competition. The Defendant and its co-conspirators, however, reaped the benefits of their conspiracies to the tune of millions of dollars paid on rigged contracts: the Defendant won over $3.6 million in rigged contracts while helping ASI and Allied win rigged contracts worth over $12 million combined.

Furthermore, the Defendant participated in the conspiracies mostly through its high-level executives. Co-defendant Swanson was one such executive. Swanson personally sought, received, and provided numerous non-competitive bids with the Defendant's ASI and Allied co-conspirators. He also participated in meetings with co-conspirator executives in which non-competitive bidding was discussed. Swanson's mere involvement in the conspiracies, especially after he became Vice-President in 2015 and President/majority owner in 2018, clearly signaled to the Defendant's co-conspirators, as well as its own employees, that the Defendant was committed to the criminal conspiracies from the top-down.

Finally, the recommended sentence promotes respect for the law. It serves as a reminder of corporations' immense responsibility to abide by the Sherman Act to ensure that customers can go into the marketplace with the confidence that they

8

will reap the benefits of fair and free competition. In the context of competitive bidding, such as the kind that takes place in the asphalt paving industry, the recommended sentence promotes the idea that customers should always get competitors' very best bid.

Accordingly, the United States' recommended sentence properly accounts for the seriousness of the Defendant's conduct and promotes respect for the law.

### ii. The recommended sentence provides both specific and general deterrence

The recommended sentence will provide adequate specific and general deterrence. The Defendant remains an asphalt paving services provider, as do its employees, including those who participated in the instant offenses such as co-defendant Swanson. They may again find themselves in situations like those that gave rise to the instant offenses, including receiving requests to submit or seek non-competitive bids. A significant criminal fine is necessary to ensure that they are put on notice that antitrust violations are taken seriously. The Defendant notes that it began a "strict 'no comp bids allowed' policy" on January 1, 2019, PSR ¶ 23, yet its conspiracy with Allied survived to at least June 2019. Considering that the Defendant continues to employ the same individuals who participated in the conspiracies, the recommended sentence will incentivize the Defendant to cultivate a culture of compliance in its actions and not just its policies, and remain vigilant

against threats to free and fair competition in the asphalt paving industry, whether they originate externally or from within. The recommended sentence thus furthers specific deterrence.

The recommended sentence also provides for general deterrence. "Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." United States v. Peppel, 707 F.3d 627, 637 (6th Cir. 2013) (quoting United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006)). Antitrust defendants frequently participate in antitrust conspiracies calculated to boost profits, take shortcuts, and subvert free and open competition. To the average corporate antitrust defendant, an insufficient penalty for violating the Sherman Act can be seen as merely the cost of doing business and undermine the need for deterrence. A significant fine is the way to defeat this perverse cost-benefit analysis by showing would-be antitrust violators that the risks of committing antitrust offenses are not worth any potential benefit.

Moreover, this type of general deterrence is especially important here because bid-rigging is a particularly difficult crime to detect. Illegal conduct that enriches offenders while minimizing the risk of detection is especially pernicious and requires strong sentences to deter it. See United States v. Zukerman, 897 F.3d 423, 429 (2d Cir. 2018) ("Considerations of (general) deterrence argue for

10

punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it" (internal citation omitted)). Given the immense effort that it takes to discover and prosecute bid-riggers like the Defendant, an insufficient penalty may undermine general deterrence and embolden future would-be violators.

A significant criminal fine furthers deterrence. Here, the need for adequate specific and general deterrence weighs in favor of imposing the United States' recommended sentence.

### iii. The recommended sentence appropriately reflects the history and characteristics of the Defendant and the nature and circumstances of the offense

The Defendant had not been charged with any federal crime prior to the instant offenses. Based on the information about its current financial condition submitted by the Defendant to Probation, it appears that it has the ability to pay a fine without significant disruption to its operations. See PSR ¶ 31.

The Defendant was formed in 1969 and since that time positioned itself as a relevant player in the asphalt paving industry. But despite its long-standing position in the industry, the Defendant chose to cross the line and corrupt the competitive landscape in violation of the Sherman Act. It received and provided non-competitive bids as part of two separate bid-rigging conspiracies spanning

11

many years and affecting numerous victims. As a result, the Defendant and its co-conspirator companies were paid millions of dollars on tainted contracts. The Defendant could have terminated its involvement in the conspiracies and ceased the criminal activity prior to the end of the relevant periods, but it did not. Instead, the Defendant, including its high-ranking executives such as co-defendant Swanson, repeatedly chose to violate the law.

The Defendant has accepted responsibility for its conduct, and it cooperated in the United States' investigation into the asphalt paving industry. The Defendant's personal history and characteristics, as well as the nature and circumstances of the offense, support the United States' recommended sentence.

> iv. **Balancing the relevant factors, the recommended sentence is sufficient but not greater than necessary to achieve sentencing objectives**

The Defendant's illegal conduct was extensive and corrupted the competitive process for many years. Accordingly, its sentence must appropriately address the sentencing objectives of § 3553(a). The United States submits that its recommended sentence of a criminal fine of $914,436, subject to any potential fine offset that the Court may grant under U.S.S.G. §8C3.4, a $400 special assessment for each count of conviction, no term of probation, and no order of restitution is sufficient but not greater than necessary to achieve those objectives.

## IV. Restitution is Discretionary

The parties have agreed to recommend that the Defendant's sentence not include a restitution order in light of the availability of civil causes of action that potentially provide for a recovery of a multiple of actual damages. Plea Agreement, ¶ 15. The Mandatory Victim Restitution Act does not mandate restitution for Title 15 offenses, including the Sherman Act, but only for crimes of violence and certain offenses under Titles 18 and 21. 18 U.S.C. § 3663A(c)(1)(A). See PSR ¶ 50. Under the Crime Victims' Rights Act, 18 U.S.C. § 3771, the United States has notified the Defendant's victims of these proceedings.

## V. Probation

The parties have agreed to recommend that no term of probation be imposed. Plea Agreement ¶ 11(c). Under 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years. In considering whether to impose probation, the Court should consider the factors set forth in U.S.S.G. §8D1.1, which include ordering a term of probation to secure payment of a fine, §8D1.1(a)(2), or to ensure implementation of an effective compliance program, §8D1.1(a)(3). As previously noted, the Defendant's financial condition appears to be in a position to support its payment of a criminal fine. PSR ¶ 31. The Defendant also reported that it is working with attorneys in developing a

written compliance plan. PSR ¶ 23. Accordingly, the United States does not recommend a term of probation.

## VI. Conclusion

For the foregoing reasons, the United States respectfully requests that the Court : 1) order the Defendant to pay a $914,436 criminal fine subject to any potential fine offset that the Court may grant under U.S.S.G. §8C3.4; 2) order the Defendant to pay a $400 special assessment for each count of conviction; 3) not impose a term of probation; and 4) not order restitution.

        Respectfully submitted,

        */s/ Ruben Martinez, Jr.*

        Ruben Martinez, Jr. (TX 24052278)
        Allison M. Gorsuch (IL 6329734)
        Melanie G. Wegner (IL 6324826)
        Trial Attorneys

        Michael N. Loterstein (IL 6297060)
        Assistant Chief

        U.S. Department of Justice
        Antitrust Division
        209 S. LaSalle St. Suite 600
        Chicago, Illinois
        Tel: 312-984-7200

Dated: May 31, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*s/Ruben Martinez, Jr.*
Ruben Martinez, Jr., TX 24052278
Trial Attorney
U.S. Dept. of Justice,
Antitrust Division
Chicago Office
209 S. LaSalle, Suite 600
Chicago, IL 60604
312-754-3932
Ruben.Martinez@usdoj.gov

Dated: May 31, 2024